Judge Mills
delivered the opinion of the court.
John Fowler exhibited his bill in chancery against the heirs and administrator of Enos Rust, deceased, alledging that he had sold to their ancestor, in the month of November, 1806, a tract of one hundred and eighty one acres of land—that on the 26th of April, 1811, he conveyed to said Enos Rust the land—and that said Enos, on that day, executed a writing under his hand and seal, to the following effect:—“This day received a deed of conveyance from “John Fowler of Fayette county, for one hundred and eigh-"ty-one acres: the price agreed upon by said Fowler and “myself, was at two dollars and fifty cents per acre, in the “month of November 1806; and as I suppose that I left in “the hands of captain Joseph Rogers, resident in Fayette “about that time, as much money due me by him as would “pay for the land and discharge the debt, I do hereby re-"quest captain Joseph Rogers, of Fayette, to settle with “said John Fowler and take in this paper, which shall be “good in the final settlement of my accounts with said “Rogers.” That at the same time said Rust executed his note for the balance, which note he had lost or mislaid;—That he obtained from Joseph Rogers a credit for one hun *295 dred dollars only, and could get credit for no more, and that the residue was still due; and he prays a decree, subjecting the land conveyed to the payment of the debt. To this the heirs answered, admitting the deed and receipt aforesaid; but alledge that their father never purchased the land of Fowler—that Joseph Rogers was indebted to their ancestor for acting as his overseer many years, and that Rogers proposed to procure land from Fowler for him in payment of the debt, to which proposal their ancestor acceded;—that Rogers purchased the land for their ancestor of Fowler, and that their ancestor was wholly unknown in the contract as far as payment was concerned. They contend that by the delay of Fowler they have lost the debt on Rogers, which they alledge was sufficient to discharge the amount; and that Fowler had admitted the contract to be made with Rogers, and had claimed the payment of him by way of discount against a debt due from Fowler to Rogers, in a bill in chancery filed in Fayette for that purpose a copy of which, with its exhibit, they set forth as part of their answer. They deny the existence of any note or evidence of the debt, except the receipt aforesaid. On a final hearing the court dismissed the bill with costs; from which decree Fowler has prosecuted this appeal, and to revise its merits is now the duty of this court.
A vendor of lands has a lien thereon for the payment of the purchase money, unless he waives it by some of his own.
It is a well settled principle that the vendor of land retains a lien for the purchase money, which can be coerced in a court of equity, unless he has done some act which waives the lien, or the land has passed into the hands of an innocent purchaser. Whether Fowler has lost his lien on this tract, is the question to be considered. We place no stress on the existence of the note. Its loss is sworn to; but its existence is not satisfactorily proven. The receipt, which is also called the order on Rogers, is the strongest evidence of the debt. It is true that Fowler has, in his bill filed against Rogers, alledged the sale to be made to him, and claims his responsibility for the whole price; but he does not alledge or charge that Rodgers owed to Rust more than the one hundred dollars which was paid him, and contends that Rogers is liable whether he owes Rust that sum or not. The directions of Fowler to Rust, and the agency he gave to Rogers to sell Rust the land, on the back of the plat filed in the cause, shew he was to look to Rust for any balance not paid by Rogers—the express words of the receipt, confirmed by the deposition of Rogers, clear *296 ly shew that Fowler contracted with Rust, the assertions of his bill from Fayette notwithstanding, and that none of the purchase money is paid except one hundred dollars, and he has no means of coercing Rogers to pay the balance.—Has then his acts, done in receiving the order on Rogers, deprived him of recurring back to the land? Had Rogers, in fact, been indebted to Rust a sum equal to the amount of the order, and Fowler, on Rogers’ refusal to pay the order, had failed to give notice to Rust, till the debt might have been endangered by lapse of time, his right to assert his lien upon the land might have been very questionable. But as Rogers paid one hundred dollars, and denies the existence of a greater debt, and the defendants, although they alledge sufficient funds in the hands of Rogers, have wholly failed to prove their existence, the want of notice to Rust can do him no injury, and the court conceives that Fowler is still entitled to his demand from the estate of Rust, and that his lien is still existing. The decree of the circuit court is therefore erroneous, and must be reversed, and the cause remanded to that court, with directions to render a decree there in favor of Fowler for the sum of four hundred and fifty-two dollars and fifty cents, with interest thereon after the rate of six per centum per annum from the twenty-fifth day of April, in the year one thousand eight hundred and eleven, till paid, subject to a credit of one hundred dollars paid on the 14th of August, 1811, and his costs; and if that sum is not paid by a reasonable day to be fixed by that court, that the sale of the land sold by Fowler to Rust, and described in the deed, be decreed at public auction, and that the demand aforesaid be discharged out of the proceeds of the sale; and also to make such other and further orders and decrees as equity may require.
This may be done by receiving from the vendee an order on another, and pursuing the debtor so negligently as to endanger he debt due vendee.
Haggin for plaintiff, Pope for defendants.